**No. 13-1143**

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**MICHAEL L. ZINNA**,
Plaintiff/Appellant,

v.

**JUDY CONGROVE**, as personal representative of the estate
of James Congrove, deceased,
Defendant/Appellee.

On Appeal from the United States District Court for the District of Colorado
Honorable Richard P. Matsch, Presiding
Case No. 05-cv-1016-RPM

Related to Prior Appeal
Tenth Circuit Case No. 10-1482
(Opinion filed June 5, 2012)

### APPELLANT'S OPENING BRIEF

Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1888 Sherman Street, Suite 370
Denver, Colorado 80203
Phone: (303) 376-2400
Fax: (303) 376-2401
Email: cbeall@lskslaw.com

*Attorney for Plaintiff-Appellant, Michael L. Zinna*

**ORAL ARGUMENT REQUESTED**

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellant Michael L. Zinna requests oral argument.


## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure,

Appellant Michael L. Zinna is an individual, and no corporate disclosure statement

is required of him.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................**Error! Bookmark not defined.**

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT .........................................................1

ISSUE FOR REVIEW ............................................................................3

STATEMENT OF THE CASE................................................................4

      A.     Nature of the Case ..............................................4

      B.     Course of Proceedings.........................................................6

      C.     Determination of the Court Below....................................11

STATEMENT OF THE FACTS .............................................................15

SUMMARY OF THE ARGUMENT ......................................................20

ARGUMENT ..........................................................................................22

      A.     Standard of Review ...........................................................22

      B.     The District Court Abused Its Discretion in Its Fee Award on Remand.................................................23

                  1.     The District Court Rejected the Law of the Case, Violated the Mandate Rule, and Sought to Supersede This Court's Prior Holdings......................................27

                  2.     The District Court Entirely Ignored a Proper Lodestar Calculation ......................................................31

                  3.     The District Court's Computation of Fees Is Nonsensical on Its Face ................................................32

      C.     The District Court Abused Its Discretion in Its Elimination of Its Prior Award of Costs....................................................35

APPENDIX

Excerpts of Time Entries ........................................................................Tab A

Order Granting Motion for Award of Reasonable Attorneys Fees
(D. Colo. Sept. 24, 2010) [Doc. No. 356] ......................................Tab B

Opinion and Judgment (10th Cir. June 5, 2012) [Doc. No. 384]............Tab C

Order (considering relevant papers on file) (D. Colo. Oct. 16, 2012)
[Doc. No. 390]...............................................................................Tab D

Findings, Conclusions and Order on Plaintiff's Application for
Attorneys' Fees Upon Remand (D. Colo. Nov. 8, 2012)
[Doc. No. 391]...............................................................................Tab E

Order Awarding Appellate Attorney Fees (D. Colo. Mar. 15, 2013)
[Doc. No. 398]............................................................................... Tab F

Order for Entry of Final Judgment (D. Colo. Mar. 15, 2013)
[Doc. No. 399]...............................................................................Tab G

Final Judgment (D. Colo. Mar. 15, 2013) [Doc. No. 400].....................Tab H

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argys v. Greenpoint Mortgage Funding, Inc.*,
    No. 07-cv-01505-REB-KMT, 2009 WL 1655007 (D. Colo. June 12,
    2009) ...................................................................................................25

*Arizona v. California*,
    460 U.S. 605 (1983).............................................................................29

*Browder v. City of Moab*,
    427 F.3d 717 (10th Cir. 2005) ......................................11, 24, 25, 31

*Brown v. Gray*,
    227 F.3d 1278 (10th Cir. 2000) .........................................................22

*Center for Biological Diversity v. U.S. Fish & Wildlife Service*,
    703 F. Supp. 2d 1243 (D. Colo. 2010) ..............................................26

*Cooper v. Utah*,
    894 F.2d 1169 (10th Cir. 1990) .........................................................24

*Copart, Inc. v. Administrative Review Board, U.S. Department of Labor*,
    495 F.3d 1197 (10th Cir. 2007) .........................................................29

*Dahlem ex rel. Dahlem v. Board of Education*,
    901 F.2d 1508 (10th Cir. 1990) .........................................................23

*Farrar v. Hobby*,
    506 U.S. 103 (1992)
    (O'Connor, J., concurring) ............................ 9, 10, 13, 15, 20, 23, 24, 27, 28, 30

*Gage v. General Motors Corp.*,
    796 F.2d 345 (10th Cir. 1986) ...........................................................29

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)...............................................................................28

*Hampton v. Dillard Department Stores, Inc.*,
   247 F.3d 1091 (10th Cir. 2001) ....................................................................25, 34

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................23, 24, 25

*Homeward Bound, Inc. v. Hissom Memorial Center*,
   963 F.2d 1352 (10th Cir.1992) ...............................................................................26

*Huffman v. Saul Holdings Limited Partnership*,
   262 F.3d 1128 (10th Cir. 2001) .........................................................22, 29, 30, 31

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S 46 (1988)....................................................................................................28

*Kentucky v. Graham*,
   473 U.S. 159 (1985)..................................................................................................23

*Lippoldt v. Cole*,
   468 F.3d 1204 (10th Cir. 2006) .......................................................................23, 27

*Mason v. Texaco, Inc.*,
   948 F.2d 1546 (10th Cir. 1991) .............................................................................30

*McIlravy v. Kerr-McGee Coal Corp.*,
   204 F.3d 1031 (10th Cir. 2000) .............................................................................30

*National Association of Professional Baseball Leagues, Inc. v. Very*
   *Minor Leagues, Inc.*,
   223 F.3d 1143 (10th Cir. 2000) .............................................................................22

*New York Times Co. v. United States*,
   403 U.S. 713 (1971) (Douglas, J., concurring) ....................................................10

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)..................................................................................................24

*People Who Care v. Rockford Board of Education*,
   90 F.3d 1307 (7th Cir.1996) ...................................................................................24

*Phelps v. Hamilton*,
    120 F.3d 1126 (10th Cir. 1997) ............................................................23, 24, 27

*Procter & Gamble Co. v. Haugen*,
    317 F.3d 1121 (10th Cir. 2003) ..........................................................................30

*Ramos v. Lamm*,
    713 F.2d 546 (10th Cir. 1983) .............................................................................26

*Robinson v. City of Edmond*,
    160 F.3d 1275 (10th Cir. 1998) ................................................22, 24, 25, 26, 35

*Rohrbaugh v. Celotex Corp.*,
    53 F.3d 1181 (10th Cir. 1995) .............................................................................29

*Sinajini v. Board of Education*,
    233 F.3d 1236 (10th Cir. 2000) ..........................................................................22

*Tidwell v. Fort Howard Corp.*,
    989 F.2d 406 (10th Cir.1993) ..............................................................................25

*Ute Indian Tribe v. Utah*,
    114 F.3d 1513 (10th Cir. 1997) ..........................................................................30

*Zinna v. Board of County Commissioners*,
    No. 05-cv-01016-RPM, 2010 WL 3925331
    (D. Colo. Sept. 24, 2010)................................................................................8, 34

*Zinna v. Board of County Commissioners*,
    No. 05-cv-01016-RPM, 2010 WL 3925532
    (D. Colo. Sept. 24, 2010).........................................................................9, 10, 11

*Zinna v. Congrove*,
    680 F.3d 1236 (10th Cir. 2012) ..................... 1, 4, 5, 9, 19, 22, 23, 24, 27, 31, 35

*Zinna v. Congrove*,
    No. 05-cv-01016-RPM, 2012 WL 5456405
    (D. Colo. Nov. 8, 2012)..................................................................12, 17, 27, 31

*Zinna v. Congrove*,
  No. 05-cv-01016-RPM, 2013 WL 1092999
  (D. Colo. Mar. 15, 2013) ............................................................... 13, 29

**Statutes**

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1343(a)(3) ................................................................... 1

28 U.S.C. § 1920 ............................................................................ 9

42 U.S.C. § 1983 ........................................................... 1, 3, 4, 23

42 U.S.C. § 1988(b) ............................................... 1, 5, 16, 22, 26, 36

**Other Authorities**

Fed. R. App. P. 3(a)(1) .................................................................. 2

Fed. R. App. P. 4(a)(1)(A) ............................................................ 2

Michael Moore, Here Comes Trouble:  Stories from My Life (2011) ........... 28

S. Rep. No. 94-1011, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908 .............. 26

## STATEMENT OF RELATED CASES

This appeal is related to the prior appeal brought by Appellant Michael L.

Zinna in Tenth Circuit Case No. 10-1482, in which this Court issued its opinion on

June 5, 2012.  That opinion is reported at *Zinna v. Congrove*, 680 F.3d 1236 (10th

Cir. 2012).  This second appeal concerns the subsequent post-appeal rulings by the

district court following this Court's remand of the matter for further consideration

of the plaintiff's entitlement to an award of reasonable attorney's fees under 42

U.S.C. § 1988(b).  The prior panel for the first appeal was composed of Judges

Lucero, McKay and Tymkovich.


## JURISDICTIONAL STATEMENT

The United States District Court for the District of Colorado had jurisdiction

over the plaintiff's underlying civil rights claim pursuant to 42 U.S.C. § 1983, and

28 U.S.C. §§ 1331 and 1343(a)(3).  The district court had authority to award a

reasonable attorney's fees pursuant to 42 U.S.C. §1988(b).

The issue of appellate jurisdiction for this second appeal was addressed by

the parties' prior briefing pursuant to the Court's *sua sponte* order, entered May 1,

2013, directing the parties to submit briefing on the question of the Court's

appellate jurisdiction.  Following that briefing, the Court's jurisdictional attorney

entered an order, dated June 19, 2013, tendering consideration of the question of

appellate jurisdiction to the merits panel.  Appellant directs the merits panel's attention to that briefing filed by the parties on May 15, 2013, June 3, 2013, and June 10, 2013, respectively.

Appellant reiterates here his prior arguments that this Court has proper appellate jurisdiction over all issues in this appeal pursuant to his Notice of Appeal filed on April 13, 2013, in light of the non-final nature of the district court's initial attorney's fees findings following the remand of this case and the consolidated nature of this Court's remand directive to the district court, encompassing attorney's fees for both the trial court proceedings as well as the initial appeal.

Hence, this Court's appellate jurisdiction arises under 28 U.S.C. § 1291 and Fed. R. App. P. 3(a)(1) and 4(a)(1)(A).

## <u>ISSUE FOR REVIEW</u>

The following question is submitted for this Court's review:

- Did the district court abuse its discretion in failing to comply with this Court's mandate in the prior appeal by again refusing to conduct a lodestar analysis of the plaintiff's legal fees and by again allowing its personal distaste toward the plaintiff and his journalism to influence its analysis of a reasonable attorney's fee for the plaintiff's victory on his First Amendment claim under 42 U.S.C. § 1983?

## STATEMENT OF THE CASE

**A.    Nature of the Case**

The underlying proceedings in this second appeal involved a claim by

Plaintiff-Appellant Michael L. Zinna ("Zinna") under 42 U.S.C. § 1983 for

violation of his First Amendment rights by the late, then-Chairman of the Board of

County Commissioners of Jefferson County, James Congrove ("Congrove").[1]

Zinna alleged, and the jury agreed, that Congrove used the power of his office,

under color of state law, to retaliate against Zinna's exercise of his free speech

rights at his website JeffersonCountyExposed.com, later renamed

ColoradoExposed.com, and on his similarly named radio talk show.

The jury's findings as to Congrove's pattern of retaliation against of Zinna's

exercise of his free speech rights were never appealed by Congrove, and this

Court's recitation of that history in its opinion in the first appeal accurately

describes the nature of the constitutional violations perpetrated by Congrove and

demonstrated by Zinna at trial.  *See Zinna*, 680 F.3d at 1237-39.

In sum, Zinna's frequently hyperbolic reporting uncovered misdeeds and

malfeasance within the county government at Jefferson County, as well as

elsewhere, and his reporting made Zinna unpopular with many county officials in

---

[1] Mr. Congrove passed away during the pendency of the prior appeal. Subsequently, his position as defendant has been filled by his widow, Judy Congrove, as the personal representative of Mr. Congrove's estate.

Jefferson County, including the chairman of the county commission. *See id.* at 1238. Congrove's displeasure at Zinna's journalism led the county commission chairman to use county resources, including funds for the payment of a private investigator, to pursue a pattern of harassment against Zinna, including the delivery of unflattering information that the investigator had uncovered about Zinna to advertisers on Zinna's radio talk show as well as to Zinna's friends and associates. *See id.*

Both the first appeal, and this one, did not concern the substantive merits of Zinna's First Amendment claim. Rather, the first appeal dealt solely with the district court's post-trial award of a mere $8,000 in attorney's fees under 42 U.S.C. § 1988(b), following more than four years of fierce litigation and an eight-day jury trial. (Aplt. App. at 583-586 [Doc. No. 356].)

This second appeal concerns the trial court's subsequent fee award following this Court's remand, wherein the trial court entered a judgment for just $34,927.50. (Aplt. App. at 697-703, 705 [Doc. Nos. 398, 400].) This award encompassed an allocation of a mere $16,240 for the trial court proceedings, and $18,687.50 for the appellate proceedings on the first appeal. (Aplt. App. at 697-703 [Doc. No. 398].) In so doing, the district court also negated the prior award of costs to Zinna that had been set in the amount of $9,464.51, an assessment that had never been contested by either party. (Aplt. App. at 644-51 [Doc. No. 391].)

**B.     Course of Proceedings**

Zinna first filed suit on June 3, 2005, but the allegations that framed the actual case that went to trial were set out in Zinna's Third Amended Complaint filed January 25, 2006 (Aplt. App. at 42-59 [Doc. No. 89]), and his First Supplement to Third Amended Complaint filed November 24, 2007 (Aplt. App. at 72-77 [Doc. No. 190-2]).  The district court sustained the sufficiency of the Third Amended Complaint as to two defendants, Congrove and the Board of County Commissioners of Jefferson County ("BoCC"), although other named defendants were dismissed from the case.  (Aplt. App. at 1, 3-7, 9-10 [Dkt. Entry Nos. 2, 11, 23, 25, 35, 41, 43, 57, 58, 71, 75, 111, 116].)  The First Supplement was endorsed by the district court despite a negative recommendation by the magistrate judge. (Aplt. App. at 16-17 [Dkt. Entry Nos. 199, 202, 203, 211].)

Zinna initially was represented by Chris Paulsen as his counsel up until Mr. Paulsen's withdrawal was approved by the district court on November 16, 2006.  Zinna then continued to litigate the case *pro se* until November 2, 2007, when undersigned counsel Christopher P. Beall entered his appearance on behalf of Zinna.  (Aplt. App. at 10, 15 [Dkt. Entry Nos. 123, 183].)

Following the district court's withdrawal of its prior referral of discovery matters to a magistrate judge, and following the district court's endorsement of the sufficiency of the First Supplement to the Third Amended Complaint (Aplt. App.

at 16-17 [Dkt. Entry No. 203]), the two remaining defendants – Congrove and the BoCC – filed motions for summary judgment that were consolidated for purposes of briefing and argument.  (Aplt. App. at 16-17 [Dkt. Entry Nos. 196, 197, 198, 204, 207, 208, 209, 211].)  After a hearing and oral argument on those motions on May 14, 2008, the district court denied the summary judgment sought by Congrove individually and set the case for trial.  (Aplt. App. at 17 [Dkt. Entry No. 211].) Thereafter, on May 23, 2008, the district court entered summary judgment against Zinna and in favor of the BoCC on Zinna's claim against the BoCC, ruling that Zinna had failed to come forward with sufficient evidence to demonstrate that the pattern of retaliation against him pursued by Congrove had been authorized or approved as an official policy of the BoCC.  (Aplt. App. at 18 [Doc. No. 217].)

The district court then authorized limited additional discovery prior to trial, and the parties engaged in an extended period of reopened discovery, including numerous additional depositions and motions practice.  Pretrial conferences were conducted on May 29, 2009, and November 13, 2009.  (Aplt. App. at 15, 19-20, 22-23 [Dkt. Entry Nos. 221, 245, 253, 273, 276, 292].)

The trial commenced on November 30, 2009, and continued through December 9, 2009.  (Aplt. App. at 24-25 [Dkt. Entry Nos. 304, 307-309, 312-314, 316].)  Both parties were represented by two attorneys at trial, with staffing from a paralegal for each side.  A total of thirty witnesses testified during the eight days of

trial, nineteen for the plaintiff, and eleven for the defendant, and more than 100

trial exhibits were offered by the parties.  (Aplt. App. at 24-25 [Dkt. Entry Nos.

304-317].)

      After sending out a jury note asking for the date when the First Amendment

was adopted, and being informed that the first ten amendments to the Constitution

were enacted by the first Congress in 1789, and the First Amendment was deemed

adopted by the States in 1791, the jury returned a verdict finding in favor of Zinna

and awarding $1,791 in damages.  (Aplt. App. at 25 [Dkt. Entry No. 318].)  The

jury's verdict answered "Yes" to the question of whether "the Defendant, James

Congrove, used his authority as a Jefferson County Commissioner to take adverse

action against Mr. Zinna in violation of the First Amendment to the United States

Constitution."  (Aplt. App. at 84 [Doc. No. 316-2].)

      Congrove subsequently moved to set aside the verdict on grounds of

insufficient evidence, a motion that was denied by the district court on

September 24, 2010.  (Aplt. App. at 85-91 [Doc. Nos. 324, 352].)  The BoCC also

moved for an award of its costs in light of its summary judgment victory, a motion

that the district court also denied on September 24, 2010, noting that there was

"sufficient complexity in the attempt to distinguish individual actions from

governmental action in this case to justify the plaintiff's pursuit of the claims

against the County Commissioners as the governing body."  *Zinna v. Bd. of Cnty.*

*Comm'rs*, No. 05-cv-01016-RPM, 2010 WL 3925331, at *1 (D. Colo. Sept. 24,

2010).

      Also on September 24, 2010, the district court entered its order on the

plaintiff's request for attorney's fees, the subject of the subsequent first appeal,

concluding that Zinna should recover attorney's fees of only $1,000 per day of

trial, for a total of $8,000, independent of and despite the substantial volume of

work spent on the case both prior to trial and subsequently during the post-trial

proceedings.  *See Zinna v. Bd. of Cnty. Comm'rs*, No. 05-cv-01016-RPM, 2010

WL 3925532, at *2 (D. Colo. Sept. 24, 2010), *rev'd*, 680 F.3d 1236 (10th Cir.

2012).  In this order, the district court also approved an award of taxable costs

under 28 U.S.C. § 1920 in the amount of $9,464.51.

      The district court's determination of a fee award of only $8,000 was

appealed to this Court, which ruled that the district court's decision was arbitrary

and an abuse of discretion in its application of the *Farrar v. Hobby*[2] factors.  *See*

680 F.3d at 1237, 1239-42.  This Court concluded, in light of its review of what it

described as "the expansive record," that the first *Farrar* factor, that is, the

difference between the judgment recovered and the recovery sought, favored

Congrove, although the Court explicitly determined that the jury's award was not a

---

[2] 506 U.S. 103 (1992).

9

"nominal" damages award and was not merely a technical victory. *See id.* at 1240-41. This Court also concluded that the second *Farrar* factor, which looks to the significance of the legal issue on which the plaintiff has prevailed, favored Zinna because the jury had vindicated Zinna's allegations of a pattern of adverse action perpetrated against him by a high government official. *See id.* This Court also rejected the district court's assessment of the third *Farrar* factor, which assesses whether the plaintiff's lawsuit accomplished some public goal, finding that the district court's "vitriolic portrayal" of Zinna's journalism blinded the district court's assessment: "The importance of [Zinna's reporting] cannot be downplayed simply because it was not always performed in a tasteful manner." *Id.* at 1241 (citing *N.Y. Times Co. v. United States*, 403 U.S. 713, 723-24 (1971) (Douglas, J., concurring) ("The dominant purpose of the First Amendment was to prohibit the widespread practice of governmental suppression of embarrassing information.")). Rather, this Court concluded that Zinna's reporting on a plethora of local government issues, delivered to a sizable audience over an extended period of time, "performed a public service by encouraging transparency and accountability among officials." *Id.*

Following its legal determination of the proper balance of the three *Farrar* factors, this Court concluded that Zinna's victory "was not merely technical" and

that Zinna was therefore entitled a reasonable attorney's fee.  *See id.* at 1242.  In

this regard, this Court was clear and emphatic:

> It is not enough, however, for a court to simply "eyeball a fee request and cut it down by an arbitrary percentage."  *Browder v. City of Moab*, 427 F.3d 717, 723 (10th Cir. 2005) (quotation omitted).  The $8,000 award at issue was not based on the lodestar or Zinna's records.  Rather, the court arbitrarily assumed that this amount was sufficient without reference to the record.  This leaves us with no alternative but to conclude that an abuse of discretion resulted, requiring us to remand for the district court to determine—based on the facts and the timesheets submitted by Zinna—what work warrants reimbursement.

*Id.*

In so holding, this Court made clear that its direction to the district court was

to review the timesheets submitted by Zinna's counsel and to assess a reasonable

amount of a fee award based on the work actually performed by Zinna's attorneys,

understanding that the district court was free to discount from those hours the

"litigation surrounding claims in which Zinna did not succeed."  *Id.* at 1242 & n.1.

This Court also subsequently granted Zinna's motion for attorney's fees on

appeal, and directed the district court, in its consideration of the case on remand,

also to include in its award of a reasonable fee the work of Zinna's counsel during

his first appeal.  (Aplt. App. at 590-605 [Doc. No. 384].)

## C.    Determination of the Court Below

Following the remand of this case to the district court, the trial judge entered

an order on Oct. 16, 2012, indicating that he would not entertain any post-appeal

briefing concerning the fees requested for the trial court proceedings and would

rather consider that issue solely on the basis of the relevant papers that already

were on file with the district court and the Court of Appeals.  (Aplt. App. at 643

[Doc. No. 390].)

On November 8, 2012, the district court entered its findings with regard to

its reassessment of a reasonable fee for the trial court proceedings, determining that

Zinna should receive no more than $16,240 for the trial court proceedings,

calculated at a rate of seven (7) hours per day of trial, for eight (8) days of trial, for

a single attorney billing at $290/hour.  *See Zinna v. Congrove*, No. 05-cv-01016-

RPM, 2012 WL 5456405, at *4 (D. Colo. Nov. 8, 2012).  In reaching this

determination, the district court directly contradicted this Court's determination

that Zinna's victory was not merely technical, concluding in its own view that "the

ultimate result achieved warrants the conclusion that this was no more than a

technical victory."  *Id.* at *2.  Moreover, in direct contravention of this Court's

explicit instruction to conduct a lodestar analysis, the trial court refused to do so:

> Normally a lodestar analysis . . . would be required to determine
> the reasonableness of the time spent and the hourly rates claimed in
> making a fee award.  That is not necessary in this case.

*Id.* at *4.

In its assessment of an award of $16,240, the district court made no

allocation for any pretrial preparation, any attendance at pretrial hearings mandated

by the Court, any compliance with the Court's requirements for trial submissions, including exhibits, exhibit lists, witness lists, jury instructions, jury voir dire, or any of the multiplicity of other tasks required to present a trial to a jury, let alone the work apart from pretrial preparation for which the plaintiff was incontrovertibly successful, including his success on both of Congrove's motions to dismiss and for summary judgment, as well as other motions, such as the dismissed defendant's motions for sanctions.

Following the district court's findings concerning attorney's fees for the trial proceedings, the trial court entertained briefing concerning the amount of fees to be awarded for the appellate proceedings on the first appeal.  (Aplt. App. at 652 [Doc. No. 392].)  On March 15, 2013, the trial court entered its findings with respect to those fees, again concluding that Zinna's counsel was entitled to a mere fraction of the work actually performed on the appeal even though Zinna's appeal was entirely successful in all respects, concluding that Zinna should receive only $18,687.50 for the appeal.  *See Zinna v. Congrove*, No. 05-cv-01016-RPM, 2013 WL 1092999, at *4 (D. Colo. Mar. 15, 2013).

In its ruling on appellate fees, the trial judge accused this Court of falsely portraying the record, patronizing the trial judge, and insulting the trial court's integrity:  "That [referring to this Court's analysis of the third *Farrar* factor] is a false accusation and a patronizing insult to this court's integrity."  *Id.* at *2.

13

The district court thereupon entered judgment for a total of award of fees and costs of just $34,927.50.  (Aplt. App. at 705 [Doc. No. 400].)

## STATEMENT OF THE FACTS

Because this Court's prior determinations of the *Farrar* factors stand as law of the case and are not subject to challenge, Zinna's summary of the facts here does not focus on the details of the pattern of adverse action pursued by Congrove against Zinna while Congrove was chairman of the BoCC in the mid-2000s, but rather on the course of the litigation of this case from June 3, 2005, going forward, and the fees incurred by Zinna during that prolonged litigation.[3]

The complete record of the entire course of that litigation is reflected in the summary of contemporaneous time entries contained in the Supplemental Declaration of Christopher P. Beall in Support of Plaintiff's Fee Petition, filed on March 18, 2010, in connection with Zinna's reply brief in support of his fee petition, as well as in the parallel Declaration of Tracy Ashmore, filed on November 23, 2012, in connection with Zinna's application for appellate fees. (Aplt. App. at 493-573, 653-661, 663-693 [Doc. Nos. 348-2, 395, 395-1].)

As summarized in these time records, the trial court proceedings encompassed a total of 1,971.6 hours of work, at a billed value of $494,133, with

---

[3] As reflected in the declarations submitted by Zinna's counsel for both the initial fee petition and the application for appellate fees, the fees at issue in this appeal have actually been incurred and billed to Zinna by Zinna's counsel; this is not a case where Zinna was represented by contingent-fee counsel who seek to reap a windfall. (Aplt. App. at 493-573, 653-661, 663-693 [Doc. Nos. 348-2, 395, 395-1].) The moneys sought here are thus actual out-of-pocket expenses that Zinna has borne for many years.

an additional amount of non-taxable costs of $9,329.  (Aplt. App. at 572 [Doc. No. 348-2 at 80].)  The appellate proceedings encompassed 224.6 hours of work, at a billed value of $63,820.  (Aplt. App. at 663 [Doc. No. 395-1 at 2])  Thus, the total amount of fees and non-taxable costs sought by Zinna under 42 U.S.C. § 1988(b) was $567,282.

Importantly, nearly a year of the litigation of this case, from November 2006 to November 2007 is not reflected in the time records submitted with Zinna's fee petitions because this is the period when Zinna represented himself.  As the docket reflects, however, the case continued to be actively litigated by defense counsel throughout this period when Zinna was *pro se*.  (Aplt. App. at 10-15 [Dkt. Entry Nos. 124-182].)

Shortly after the entry of appearance of Zinna's new counsel, the district court conducted a settlement conference on November 6, 2007.  (Aplt. App. at 15 [Dkt. Entry No. 184].)  As Zinna attested in his declaration in support of the initial fee petition, Zinna offered at that point to settle the case in exchange for an admission of wrong-doing and a payment of just $1.  (Aplt. App. at 407-408 [Doc. No. 326-13 ¶ 4.)  As of that date, such a settlement for only $1 and an admission of wrong-doing would have avoided more than $400,000 in ensuing fees and costs for the plaintiff.  (Aplt. App. at 572 [Doc. No. 348-2 at 80].)

In fact, not only did the district court not account for the consequences of Congrove's refusal to enter into an early, nominal-value settlement, the district court did not even acknowledge the time recorded by Zinna's counsel on subsequent efforts to settle the case, both before and after trial.  Nearly thirty-three hours (32.9 hours) were recorded by Zinna's trial counsel on settlement efforts, through communications with opposing counsel, participation in court-scheduled settlement conferences, and participation in private mediation.  (*See* App'x Tab A (Excerpts of Time Entries), attached with this Opening Brief.)  This expenditure of effort in attempting to settle this case belies the trial court's vitriolic assertions that Zinna's pursuit of the litigation reflected only his indulgence in a personal vendetta.  *See Zinna*, 2012 WL 5456405, at *4.

The details of the time records from Zinna's counsel also underscore the fallacy of the district court's assessment as to a reasonable amount of time for the trial of this case.  Thus, for example, in contrast to the trial court's assessment that a mere 56 hours of work should be compensated for the eight-day trial, the time records reveal a vast amount of additional work that was in fact necessary to present the case to the jury:

- Trial proceedings – actual in-court time, as well as overnight and weekend time to prepare for the following trial day, from Nov. 30, 2009 to Dec. 8, 2009:   **214.5 hours**, at **$54,351**.

17

- Trial preparation – witness interviews and preparation of direct examination and cross-examination outlines, from Sept. 8, 2009 to Nov. 29, 2009: **132.2 hours**, at **$34,834.50**.

- Preparation of trial exhibits, trial exhibit binders, and exhibit lists, from Oct. 22, 2009 to Nov. 27, 2009:  **64.5 hours**, at **$14,740**.

- Prepare deposition designations, from Sept. 8, 2009 to Nov. 24, 2009: **33.6 hours**, at **$7,797.50**.

- Attendance at court-mandated pretrial conferences, on May 29, 2009 and Nov. 13, 2009:  **17.2 hours**, at **$3,590**.

- Prepare trial brief for court, Oct. 29, 2009 to Nov. 3, 2009:  **20.8 hours**, at **$6,032**.

- Prepare pretrial order for court, May 8-22, 2009 and Oct. 7, 2009 through Nov. 2, 2009:  **87.1 hours**, at **$22,132**.

- Preparation jury instructions and voir dire, Oct. 12, 2009 to Nov. 6, 2009: **34.1 hours**, at **$8,863**.

(*See* App'x Tab A (Excerpts of Time Entries).)

    This summary thus shows that fully 604 hours of work were required for just the trial, at a billed value of $152,340, in contrast to the mere 56 hours of work, at a value of just $16,240, that the district court awarded.  (*Id.*)

Indeed, even Congrove himself conceded that a properly calculated lodestar amount for the hours reasonably expended during the district court proceedings amounted to a full $309,375.50.  (Aplt. App. at 487 [Doc. No. 339 at 14].)  This calculation – which is fully *eighteen (18) times* greater than the amount selected by the district court – already encompasses the discounts and reductions that this Court indicated would be necessary to account for those aspects of the case on which Zinna was not successful.  Thus, for example, Congrove's concession of a reasonable lodestar amount of $309,375.50 already includes a complete elimination of the fees billed by Zinna's first attorney Mr. Paulsen (deducting $71,072.50), which thus encompassed all the time recorded for claims against defendants who were dismissed prior to the summary judgment motions.  (Aplt. App. at 487 [Doc. No. 339 at 14].)  Congrove's conceded amount also already includes a dramatic reduction in the hourly rate for Zinna's second-chair counsel Adam Platt (deducting $59,097).  (*Id.*)  Congrove also made further reductions in his calculation to address additional unsuccessful motions and disputed costs. (Aplt. App. at 485-87 [Doc. No. 339 at 12-14].)  Thus, Congrove's concession of a lodestar amount of $309,375.50 actually anticipates precisely the kind of award that this Court predicted in Footnote 1 to the appellate opinion that the trial court should award.  *See Zinna*, 680 F.3d at 1242 n.1.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in its determination of a fee award for this case, set at $34,927.50, an amount that bears no correlation to a lodestar calculation of the actual work invested in this case, and an amount that is irreparably colored by the trial court's error in disputing this Court's prior resolution of the *Farrar v. Hobby* analysis. The district court's abuse of discretion started with its improper rejection of this Court's determination of the law of the case concerning Zinna's entitlement to a reasonable attorney's fee under *Farrar*, wherein the trial court engaged in a re-weighing of the public importance of the plaintiff's litigation. The district court's abuse of discretion continued in its refusal to comply with this Court's mandate that the trial court must conduct an actual lodestar calculation based on Zinna's actual timesheets and records.

The district court's abuse of discretion is exemplified by its failure to even review the time records for the one part of the case for which it was willing to make an award of fees, the actual trial, where the trial court merely assumed a seven-hour trial day for eight days of trial, even though the time records showed that the trial days lasted far longer than seven hours. The district court also failed to account for the time spent complying with its own rules for the trial, and the time spent preparing an orderly presentation for the jury.

The district court's abuse of discretion also extended to its refusal to reimburse Zinna for the time spent on aspects of the case for which he was entirely successful, including his success against the dispositive motions filed by Congrove, as well as the time spent on matters that were inherently interrelated to his successful claim against Congrove, including his claim against the BoCC.

The district court's improper animosity toward Zinna and its antipathy toward his journalism also erroneously influenced the trial court's assessment of the hours spent on the appellate proceedings, where the trial court incorrectly concluded that the prior appeal of this case was simple and straightforward even though the case required an extended, published opinion by this Court, with an accompanying concurrence from a member of the panel.

Finally, the district court abused its discretion in its remand award where it negated the amount of the taxable costs that previously had been awarded to Zinna in the trial court's first decision, and which were not challenged on appeal, but which were not included in the trial court's final judgment following the remand.

# ARGUMENT

## A.    Standard of Review

The Court of Appeals reviews the reasonableness of a district court's award of attorney's fees under Section 1988(b) for an abuse of discretion.  *See Sinajini v. Bd. of Educ.*, 233 F.3d 1236, 1239 (10th Cir. 2000); *see also Zinna*, 680 F.3d at 1239.  "However, we review the district court's statutory interpretation or legal analysis of the basis for the award *de novo*."  *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).  In this context, determinations of matters under the "law of the case" doctrine and the "mandate rule" are questions of legal analysis that are subject to *de novo* review.  *See Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1131 (10th Cir. 2001); *see also Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000) ("[B]ut we review *de novo* the district court's application of the legal principles underlying that decision.").

And finally, the determination of what constitutes a "reasonable" fee amount "is not a factual finding insulated by the clear-error standard, but rather, the reasonableness determination is a mixed fact-law application which is itself subject to the general abuse-of-discretion standard."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

22

**B.      The District Court Abused Its Discretion in Its Fee Award on Remand**

As this Court made clear in its first opinion in this case, the Supreme Court

has advised that "fees should be awarded [to successful Section 1983 litigants] . . .

'unless special circumstances would render such an award unjust.'"  *Kentucky v.*

*Graham*, 473 U.S. 159, 164 (1985) (citation omitted); *see also Hensley v.*

*Eckerhart*, 461 U.S. 424, 435 (1983).  Accordingly, a "district court's discretion to

deny fees to a prevailing plaintiff is quite narrow."  *Dahlem ex rel. Dahlem v. Bd.*

*of Educ.*, 901 F.2d 1508, 1514 (10th Cir. 1990) (quotation omitted).

In the prior appeal of this case, this Court directly addressed and resolved

the question of whether the special circumstance of a "de minimis" or merely

"technical" success warranted a substantial reduction in the lodestar calculation for

Zinna's fees in this case.  *See Zinna*, 680 F.3d at 1239-40 and 1242; *see also*

*Farrar*, 506 U.S. at 116-22 (O'Connor, J., concurring); *Lippoldt v. Cole*, 468 F.3d

1204, 1223 (10th Cir. 2006); *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir.

1997).  This Court concluded that "Zinna's victory was not merely technical,"

therefore answering in the negative the question as to whether a *Farrar* reduction

of fees is permissible under the three-factor balancing described by Justice

O'Connor in her *Farrar* concurrence and adopted by this Court in *Phelps* and

*Lippoldt*.  *See Zinna*, 680 F.3d at 1242 (holding that no *Farrar* reduction of fees is

warranted on the facts of this case); *see also Lippoldt*, 468 F.3d at 1224 (holding

that the plaintiff's success tipped the balance of the *Farrar* analysis and required

an award of reasonable fees based on a lodestar calculation).  Thus, this Court

ordered that Zinna was entitled to receive a reasonable attorney's fee based on a

lodestar calculation.  *See Zinna*, 680 F.3d at 1242.

      In connection with such a lodestar determination of what constitutes a

"reasonable" amount of attorney's fees, this Court has long held that it is not

enough to simply "'eyeball' [a] fee request and cut it down by an arbitrary

percentage."  *Browder*, 427 F.3d at 723 (quoting *Robinson*, 160 F.3d at 1281

(quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th

Cir.1996))).

      Rather, to determine a reasonable amount for a fee award, a court must begin

by calculating the lodestar amount that is the product of the number of attorney

hours "reasonably expended" and a "reasonable hourly rate," where the resulting

figure "is entitled to the presumption that this lodestar amount reflects a

'reasonable' fee."  *Robinson*, 160 F.3d at 1281; *see also Pennsylvania v. Del.

Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-65 (1986), *supplemented

by* 478 U.S. 546 (1986); *Hensley*, 461 U.S. at 433; *Phelps*, 120 F.3d at 1131;

*Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990).

      Of course, in evaluating whether the claimed number of hours reflected in

the plaintiff's reimbursement request is "reasonable," a court may discount those

hours related to discrete and severable claims for which the plaintiff was not successful. *See Robinson*, 160 F.3d at 1283. However, "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award." *Id.* "Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation." *Id.*; *see also Browder*, 427 F.3d at 723 and n.10 (holding that it is an abuse of discretion to exclude compensation for "related" claims where the claims "involve a common core of facts or will be based on related legal theories" (quoting *Hensley*, 461 U.S. at 435)); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1120 (10th Cir. 2001) (refusing fee reduction despite partial success where all claims stemmed from same facts: "[A]ll of the claims in this case were very similar and stemmed from the same set of facts."); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412 (10th Cir.1993) ( "There was . . . one bundle of evidence and there was substantial success for the Plaintiff.").

In addition, when fees are sought for a prolonged or hard-fought litigation, a reviewing court must also consider the length of time required to represent the client effectively and the complexity of the case, taking into account "the number of reasonable strategies pursued [and] the responses necessitated by maneuvering of the other side." *Argys v. Greenpoint Mortg. Funding, Inc.*, No. 07-cv-01505-

25

REB-KMT, 2009 WL 1655007, at *4 (D. Colo. June 12, 2009) (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 703 F. Supp. 2d 1243, 1248 (D. Colo. 2010) (holding that a trial court may properly consider "maneuvering of the other side, or lack of cooperation or response").

As Congress noted when it enacted the fee-shifting provision in Section 1988(b), the purpose behind this measure was to ensure compensation "adequate to attract competent counsel." *See* S. Rep. No. 94-1011, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913, quoted in *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir.1992). It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. Such a result would do irreparable damage to our system of private enforcement of federal civil rights. *See Robinson*, 160 F.3d 1281.

And finally, the fact that a district court chooses to depart significantly below the unchallenged portion of a fee request is itself a factor to consider in deciding whether the district court abused its discretion in its ultimate fee award. *See Robinson*, 160 F.3d at 1285-86.

**1. The District Court Rejected the Law of the Case, Violated the Mandate Rule, and Sought to Supersede This Court's Prior Holdings**

In this case, this Court's opinion in the first appeal directly and conclusively resolved the analysis under *Lippoldt* and *Phelps* with regard to Justice O'Connor's three *Farrar* factors, reversing the district court's original assessment as to the third factor and holding that Zinna's success at trial "was not merely technical." *Zinna*, 680 F.3d at 1242. In this context, this Court then specifically instructed the district court on remand "to determine – based on the facts and the timesheets submitted by Zinna – what work warrants reimbursement." *Id.*

Despite this clear holding and the specific instructions in this Court's mandate, the district court on remand nevertheless engaged in a wholesale re-analysis of the three *Farrar* factors, once again concluding – erroneously again – that Zinna's success at trial "was no more than a technical victory." *Zinna*, 2012 WL 5456045, at *2. Indeed, in direct contravention of this Court's conclusion that the third *Farrar* factor favored Zinna, the district court purported to conduct a new analysis of that factor, finding that "[n]othing at the trial of this case served any substantial public purpose."[4] *Id.* at *4.

---

[4] The trial court has once again been led astray by its notion that the "vituperative and vitriolic" tone of Zinna's journalism is a legitimate basis for discounting the significance of the legal issues at stake and the public value of the litigation. *See Zinna v. Congrove*, No. 05-cv-01016-RPM, 2012 WL 5456405, at *3 (D. Colo. Nov. 8, 2012). This Court directly rejected that notion in its prior opinion. *See Zinna v. Congrove*, 680

*Continued on following page . . . .*

Moreover, the trial court also explicitly and directly refused to conduct a

lodestar computation of Zinna's trial court fees, which this Court had explicitly

required in its mandate to the district court.  *Id.* (stating that no lodestar analysis is

"necessary" in this case because whatever sum is reached through such a

calculation "must be very substantially reduced by the application of the *Farrar*

factors").  The trial court instead simply picked the number seven out of the air, for

seven hours per trial day, for a single attorney, multiplied by eight days of trial,

leading to an amount of 56 hours in compensation for the entire trial court

---

*Continued from previous page . . .*

F.3d 1236, 1241 (10th Cir. 2012).  Moreover, the notion is simply wrong.  Countless
muckraking journalists are singularly noteworthy for the vituperativeness and just plain
meanness of their prose, with more recent examples ranging from Matt Drudge, the late
Andrew Beitbart, and Michael Moore.  *See, e.g.*, MUCKRAKING!: THE JOURNALISM
THAT CHANGED AMERICA (Judith Serrin & William Serrin eds. 2002).  Indeed, although
Zinna is far cry from the incendiary documentary filmmaker Michael Moore, their
personal histories are ironically parallel in that Mr. Moore got his start in journalism by
launching an alternative publication in Flint, Michigan, called *The Flint Voice*, whose
mission was to attack the local political establishment.  *See, e.g.*, MICHAEL MOORE, HERE
COMES TROUBLE: STORIES FROM MY LIFE (2011).  Indeed, the long history of First
Amendment jurisprudence has consistently counseled courts against weighing the
tastefulness or mean-spiritedness of uncomfortable journalism.  *See, e.g.*, *Hustler
Magazine, Inc. v. Falwell*, 485 U.S. 46, (1988) ("[I]n the world of debate about public
affairs, many things done with motives that are less than admirable are protected by the
First Amendment.  In *Garrison v. Louisiana*, 379 U.S. 64 (1964), we held that even when
a speaker or writer is motivated by hatred or illwill his expression was protected by the
First Amendment.").

Moreover, the district court's cherry-picking of certain of Zinna's articles from his
website overlooks the extensive body of his journalism that was put in front of the jury
and which demonstrated the broad-based nature Zinna's efforts to shine a light of public
accountability on government officials and government activities.  (Aplt. App. 739-821
[Pl.'s Exs. 40 and 41; Def.'s Exs. A-1, A-2, A-4, A-6 to A-9, A-12, A-22, A-25, B-1
through B-6, B-8, B-13, B-14].)

28

proceedings. *Zinna*, 2012 WL 5456045,  Similarly, in connection with Zinna's appellate fees, the trial court once again simply picked a number out of the air for the amount of time that should be compensated for the appellate work in this case, arriving at 60 hours for the appeal. *Zinna*, 2013 WL 1092999, at *4. Ironically, the district court's seat-of-the-pants guessing meant that it elected to compensate more time for an appeal in which the oral argument lasted for all of fifteen minutes versus a trial that extended over eight days.

This kind of analysis directly violates the law of the case doctrine and the mandate rule, which severely cabin the authority of a trial court when considering issues remanded to it following an appeal. *See, e.g.*, *Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 495 F.3d 1197, 1200-01 (10th Cir. 2007). Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Huffman*, 262 F.3d at 1132; *see also Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) ("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.").

The law of the case doctrine is intended to prevent "continued re-argument of issues already decided," *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th

29

Cir. 1986), and to preserve scarce court resources – to avoid "in short, Dickens'
Jarndyce v. Jarndyce syndrome." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d
1031, 1035 (10th Cir. 2000); *see also Huffman*, 262 F.3d at 1132.

In addition, an "important corollary" to the law of the case doctrine, known
as the mandate rule, provides that "a district court must comply strictly with the
mandate rendered by the reviewing court." *Ute Indian Tribe v. Utah*, 114 F.3d
1513, 1520-21 (10th Cir. 1997); *Huffman*, 262 F.3d at 1132; *see also Mason v.
Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) ("Under the 'law of the case'
doctrine, the district court may not deviate from the appellate court's mandate.").

Thus, although a district court otherwise has extensive discretion with
respect to an attorney's fee award generally, such is not the case when the district
court's discretion has been cabined by a prior appellate ruling where the appellate
court "has issued a mandate that specifically limits the district court's discretion."
*Huffman*, 262 F.3d at 1133 (reversing a trial court's attorney's fee award that
conflicted with a prior determination of this Court in a prior appeal).[5]

In this context, then, the district court simply and plainly committed errors
of law, in violation of the law of the case doctrine and the mandate rule, when it
purported to revise the three-factor *Farrar* analysis that this Court already had

---

[5] To be clear, a "mandate" consists of this Court's "instructions to the district court
at the conclusion of the opinion, and the entire opinion that preceded those instructions."
*Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003).

decided, and when it refused to review, as instructed, the timesheets submitted by

Zinna's counsel. *See Zinna*, 680 F.3d at 1242. On this basis alone, the district

court's fee award is an abuse of discretion. *See Huffman*, 262 F.3d at 1133.

### 2. The District Court Entirely Ignored a Proper Lodestar Calculation

As noted above, the district court's computation of Zinna's trial court fees

amounted to nothing more than a bald guess as to the duration of a trial day, setting

the number at seven hours, and using that assumption as a baseline for calculating

an award of $16,240 in fees for the trial court proceedings. *See Zinna*, 2012 WL

5456405, at *4. This kind of "eyeball" approach to calculating a reasonable

amount of hours is exactly the antithesis of the lodestar analysis required by the

case law. *See Browder*, 427 F.3d at 723.

Had the district court actually reviewed the contemporaneous time entries of

Zinna's trial counsel, the trial court would have discerned that many of counsel's

trial days extended well beyond seven hours of work, frequently involving as much

as thirteen and fourteen hours of work for undersigned counsel as he spent the

nights following each trial day preparing for the next day's proceedings. (*See, e.g.*,

Aplt. App. at 567-69 [Doc. No. 348-2]; *see also* App'x Tab A (Excerpts of Time

Entries (entries for CPB on Nov. 30, Dec. 1, 2, 3, 4, 7, 8 & 9, 2009).) (The time

entries also reflect weekend work during the intervening weekend in the middle of

the trial. (*See* App'x Tab A (Excerpts of Time Entries (time entry for CPB on Dec.

6, 2009)).)  These time entries show that for just a single attorney, the actual time spent handling Zinna's eight-day trial amounted to 102 hours, nearly double the 56 hours of the district court's unfounded guess.

In addition, these time records also reflect the time spent by Zinna's second-chair trial attorney Adam Platt, a staffing approach that Congrove also had used with his own two attorneys, that is, his lead trial counsel Patrick Tooley and his second-chair counsel Kevin Coates, and which is hardly unusual in light of the number of different witnesses involved and the amount of trial exhibits.

In total, the actual, contemporaneous time records for Zinna's counsel reflect that Zinna's trial team spent 214.5 hours on the trial proceedings alone, at a billed value of $54,351.  (*See* App'x Tab A (Excerpts of Time Entries).)  This volume of time is more than quadruple the amount assessed by the district court, and it is an amount that Congrove never contested during the initial trial court briefing on Zinna's fee petition.  (Aplt. App. at 32-33 [Dkt. Entry Nos. 392-408].)

### 3.  The District Court's Computation of Fees Is Nonsensical on Its Face

The absurdity of the district court's computation of fees for the trial proceedings is further revealed by the failure of the trial court to account for any of the time that was necessarily incurred in order to present the trial to the jury, as though the seven hours of trial time could somehow be presented to the jury

coherently and cogently without any preparation and without any time spent to comply with the district court's rules.

Thus, the trial court's compensation for only in-court trial time overlooks or excludes the time spent complying with the court's orders to prepare jury instructions, verdict forms, trial briefing, exhibit lists, witness lists, deposition designations, orders of proof, and status reports, or to attend pretrial conferences. (*See* App'x Tab A (Excerpts of Time Entries).)  The trial court's computation also seems to assume that a trial attorney can conduct a witness examination without having interviewed the witness ahead of trial or spent time preparing a witness examination outline.  (*See* App'x Tab A (Excerpts of Time Entries).)

In sum, Zinna's counsel actually recorded 604 hours of work directly related to the trial itself, at a billed value of $152,340.  There is simply no rational justification for reducing this expenditure of effort by almost an entire order of magnitude, taking Zinna's fee recovery for the trial proceedings down to just $16,240.

Separate from the time spent on the trial itself, Zinna's lodestar submissions also reflect a vast amount of time for work that was entirely successful, or which otherwise was quintessentially necessary to his ultimate success at trial.  For example, Zinna was successful in overcoming Congrove's dispositive motion. (Aplt. App. at 17 [Dkt. Entry No. 211].)  Zinna also was successful on his motions

for leave to file the First Supplement to the Third Amended Complaint, and to

reopen discovery, and in dealing with numerous discovery motions during the

reopened discovery period.  (Aplt. App. at 17-20 [Dkt. Entry Nos. 211, 228, 232,

234, 238, 254].)  Zinna also was successful on various post-trial motions, including

his fee petition itself in light of this Court's ruling on appeal, and his bill of costs,

and on his opposition to the BoCC's motion for an award of costs and Congrove's

motion to set aside the judgment.  (Aplt. App. at 28 [Dkt. Entry Nos. 352, 355,

356].)  Zinna also was ultimately successful in opposing the dismissed defendants'

motions for sanctions.  (Aplt. App. at 25 [Dkt. Entry No. 319].)

Indeed, even in connection with Zinna's ultimate defeat in connection with

the summary judgment in favor of the BoCC, Zinna's fees for this work are

compensable because his claim against the BoCC arose from a common nucleus of

facts, and the effort to establish liability against the county commission as a

governmental entity was necessarily interrelated to the liability issues involving

Congrove individually.  *See, e.g.*, *Hampton*, 247 F.3d at 1120.  Even the district

court recognized the interrelationship of Zinna's claims against Congrove

individually and the BoCC as a governmental entity when the trial court denied the

BoCC's motion for an award of costs.  *See Zinna*, 2010 WL 3925331, at *1.  In

this context, it was an abuse of discretion for the district court to exclude

compensation for work on Zinna's interrelated claim against the BoCC.  *See, e.g.*, *Robinson*, 160 F.3d at 1283.

In summary, although Zinna certainly acknowledges the point expressed by this Court in its prior opinion, that a portion of Zinna's total fee request in this case may not be compensable under a proper lodestar analysis, *see Zinna*, 680 F.3d at 1242 n.1, the vast majority of Zinna's fee request is in fact compensable, a fact that even Congrove conceded during the initial briefing on Zinna's fee request.  The fact that Congrove himself conceded a reasonable lodestar calculation of $309,375.50 (Aplt. App. at 487 [Doc. No. 339 at 14]), which is nearly eighteen times greater than the district court's award, demonstrates just how nonsensical is the trial court's fee award, and it is virtually conclusive as to the trial court's abuse of discretion in its ruling on remand.  *See Robinson*, 160 F.3d at 1285-86.

In this context, Zinna submits that the fee award for this case should be at least the $309,375.50 that Congrove conceded was reasonably expended for the trial court proceedings, and the $63,820 that was reasonably expended for the appellate proceedings.  The total award should thus be at least $373,195.50.

## C.    The District Court Abused Its Discretion in Its Elimination of Its Prior Award of Costs

The last abuse of discretion in the trial court's final judgment awarding Zinna only $34,927.50 is the elimination from this figure of the prior award of taxable costs, at $9,464.51, which the district court had awarded in its initial fee

award on September 24, 2010, and which neither party appealed.  (Aplt. App. at

583-86 [Doc. No. 356].)These taxable costs were found to be appropriate by the

district court when it first reviewed Zinna's Bill of Costs.  (*Id.*)  There is no

rational for them to have been eliminated from the final judgment following the

remand.


## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's

judgment as to the award of attorney's fees for the trial court and appellate

proceedings in this case.  In addition, in light of the persistent antipathy of the trial

judge assigned to this case, this Court should either enter its own assessment of a

reasonable attorney's fee, based on the record before it, or it should direct in its

mandate that the resolution of the plaintiff's award of attorney's fees and costs

under 42 U.S.C. § 1988(b) should be reassigned to a different member of the

district court's bench.

Zinna further requests that to the extent his appeal here is sustained, Zinna

should be granted leave to supplement the materials in the current record with a

further submission of the fees and costs incurred for this second appeal.

Respectfully submitted this  28th  day of August, 2013.

By:   *s/ Christopher P. Beall*
    Christopher P. Beall
    LEVINE SULLIVAN KOCH & SCHULZ, LLP
    1888 Sherman Street, Suite 370
    Denver, Colorado  80203
    Phone: (303) 376-2400
    Fax: (303) 376-2401
    Email: cbeall@lskslaw.com

*Attorney for Plaintiff-Appellant, Michael L. Zinna*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitations, typeface requirements and type style requirements of Fed. R. App. P. 32.

Specifically, the undersigned certifies that:

- The brief complies with Fed. R. App. 32(a)(7)(B)(iii).  It contains **<u>8,287</u>** words in those portions subject to the Rule.

- The brief complies with Fed. R. App. 32(a)(5) & (6) and 10th Cir. R. 32.  It has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point Times New Roman font, with footnotes in 13 point Times New Roman font.

- The brief submitted to the Court in Digital Form using the CM/ECF filing system has been scanned for viruses with the Kesaya Antimalware software application and is free of viruses.

- No privacy redactions were required for this submission

By:   *s/ Christopher P. Beall*
Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1888 Sherman Street, Suite 370
Denver, Colorado  80203
Phone: (303) 376-2400
Fax: (303) 376-2401
Email: cbeall@lskslaw.com

*Attorney for Plaintiff-Appellant Michael L. Zinna*

38

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this  28th  day of August, 2013, I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of the Court using the CM/ECF electronic filing system, and sent copies via email and U.S. Mail to the following counsel of record:


      Patrick D. Tooley, Esq.
      Kevin Coates, Esq.
      DILL DILL CARR STONBRAKER & HUTCHINGS, P.C.
      455 Sherman Street, Suite 300
      Denver, Colorado 80203
      pdtooley@dillanddill.com
      kcoates@dillanddill.com


                              *s/ Marla D. Kelley*
                                   Paralegal